# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZAFAR SHEIKH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-cv-425 |
| | ) |
| DAVID RABIN et al., | ) Judge Robert M. Dow, Jr. |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zafar Sheikh wanted to build a house on four adjoining lots that he owns in Highland Park, Illinois. Defendants David Rabin, Debbie Rabin, Hedy Berrocal, Daniel Kolleng, Luke Migala, Joel Kagan, William Schoenwald, Michael Lickerman, and Oded Orbach (collectively "Defendants") live next to or near Plaintiff's lots and opposed his plans. According to Plaintiff, upon learning that Plaintiff wanted to build a house on his lots, Defendants did whatever was necessary to keep him from obtaining the permits that he needed to build, and they did so, Plaintiff claims, because of his race, religion, and national origin.

In 2011, proceeding *pro se*, Plaintiff sued his would-be neighbors. In his first amended complaint, Plaintiff claimed that Defendants violated (and conspired to violate) 42 U.S.C. § 1985(3) (count1), 42 U.S.C. § 3617 of the Fair Housing Act ("FHA") (count 2), state and federal hate crime laws (count 3), due process (count 4), and committed crimes under 18 U.S.C. § 241 (count 5) and under 18 U.S.C. § 1621 (count 6). Defendants moved to dismiss all counts, and the motions were granted. Counts 5 and 6 improperly asserted claims under criminal statutes. Count 1, under § 1985(3), was dismissed because Plaintiff failed to allege a violation of his

federally protected rights. Count 4 claimed a due process violation without alleging state action. Counts 2 and 3 were dismissed because the complaint did not allege that Defendants acted in a way that violated the Fair Housing Act or an Illinois' hate crime statute, 720 ILCS 5/12-7.1(c). Recognizing Plaintiff's *pro se* status, the Court gave Plaintiff 21 days to file a motion for leave to amend if he thought he could cure the deficiencies the Court identified.

Plaintiff accepted the Court's offer and filed a motion for leave to amend [93] and (eventually) attached a greatly expanded proposed second amended complaint. The proposed complaint runs 174 paragraphs and asserts thirteen federal and state law claims. The question for the Court is whether that added bulk has improved Plaintiff's claims in substance. After carefully reviewing Plaintiff's allegations and the law governing each of his federal claims *de novo*, the Court concludes that the latest version of his complaint does not state a federal claim. As clear as it is from Plaintiff's allegations and many claims that he is extremely upset about his inability to build a house on his lots, it is equally clear that — no matter how generously the Court reads his complaint — he has not stated a federal claim against these Defendants. For the reasons stated below, the Court therefore respectfully denies Plaintiff's motion to amend [93]. The Court wants to emphasize, however, that its conclusion about Plaintiff's federal claims against these Defendants does not resolve his federal claims in a separate suit against the City of Highland Park and others, see Dkt. No. 1:11-cv-02334, and does not addreess and is not intended to prejudice any state law claims that he may wish to bring in state court against these Defendants.

I.   **Background**

According to the proposed complaint, Defendants were led by Rabin, Orbach, and Kagan. ¶¶ 14-17.  Plaintiff believes that Defendants improperly leveraged their "special relationships" with members of the zoning board, city council, and mayor to get their way.  ¶¶ 19-20.  Plaintiff asserts that Defendants' pressure ultimately convinced the city to reclassify his lots as corner lots that require wider setbacks and that it prevented Plaintiff from getting the approvals that he needed to consolidate his lots into one.  ¶ 27-28.

Defendants also allegedly made knowingly false claims about his property — although the who, where, and when are often unclear.  For instance, Plaintiff says that Defendants told the Zoning Board that his lots were a "swamp" and "un-buildable."  ¶¶ 64, 130-32.  According to Plaintiff, Defendant Kagan added that "I have substantial construction experience and I can tell you with 200 percent certainty that no house can be built on this lot as this lot has major flooding problems."  ¶ 65.  Defendant Orbach allegedly said that Plaintiff's lot "is just a big large gutter."  ¶ 66.

Plaintiff did not get the variances and approvals that he needed to build.  ¶ 68.  And because Plaintiff could not build a house on his property, Defendants were able to continue using it for their own purposes. Specifically, Plaintiff alleges that Defendant Berrocal set up flower beds on Plaintiff's property and Defendant Rabin used it for barbeques.  ¶¶ 42-44.

Plaintiff, a Muslim from South Asia, believes that Defendants disregarded his property rights and opposed his plans to build a house in their neighborhood because of his race, religion, and national origin.  For instance, Defendant Rabin allegedly said at a zoning meeting that Plaintiff could live in a 12-inch wide house on his property and that wouldn't be a problem because "these kind of houses were quiet [sic] common in poor and undeveloped countries" and

that if "people in these countries can live and survive in that kind of house, the Plaintiff should also be able to live and survive in it." ¶ 35. Another time (when and where, Plaintiff does not say), Defendant Orbach allegedly told Plaintiff that "our subdivision is all white and I don't think you will fit in here." ¶ 37. Defendant Kaplan allegedly yelled at Plaintiff at a Zoning Board meeting that "I don't want you here, I don't want you in my subdivision. We told you many times, why don't you listen." ¶ 38. Defendant Berrocal allegedly yelled repeatedly at Plaintiff and his family, saying things like "you are shameless people, why don't you leave us alone" and: "there are so many suburbs, why don't you live someplace else, where you will be at least close to 'your people.'" ¶ 39.

Most troublingly, Plaintiff alleges that Defendants' opposition to his plans included threats of violence. Plaintiff alleges (repeatedly) that Defendant Kagan told him that if he builds a house on his property, it would be burned down. ¶¶ 41, 55, 80, and 110. Plaintiff also claims that Defendant Orbach has an extensive arsenal and that, in retrospect, it seems that Orbach was making a death threat when he said to Plaintiff "I think you should not push too much and continue to insist on building a house here, as it may not turn out to be good for you." ¶ 53.

## II. Legal Standards for Leave to Amend and Rule 12(b)(6)

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). However, it is settled that a district court may deny a motion for leave to amend when the amended pleading would be futile. *Bethany Phamacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). An amended complaint is futile if it could not withstand a motion to dismiss. See *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 811 (7th Cir. 2009).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

### III. Analysis of Plaintiff's Federal Claims

#### A. Fair Housing Act (Counts 1 – 3)

Plaintiff asserts that Defendants interfered with his use and enjoyment of his property because of his race (count 1), national origin (count 2), and religion (count 3) in violation of 42 U.S.C. § 3617 of the FHA, which makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

5

In *Bloch v. Firschholz*, 587 F.3d 771, 781-83 (7th Cir. 2009) (en banc), the Seventh Circuit explained that § 3617 can be violated without an independent violation of sections 3603, 3604, 3605, or 3606. Moreover, § 3617 can be violated by a defendant's post-acquisition (that is, post-sale or post-rental) conduct. *Id.* at 781-83. In other words, § 3617 may be violated when a protected individual is coerced, threatened, intimidated, or interfered with on account of having exercised certain rights protected by the FHA, whether or not those threats amount to an independent violation of the FHA and whether or not that person is coerced, threatened, intimidated, or interfered with before or after they acquire or rent a particular property. Thus, to state a § 3617 claim, Plaintiff must allege that (1) he is a protected individual under the FHA, (2) he was engaged in the exercise or enjoyment of his housing rights, (3) Defendants coerced, threatened, intimidated, or interfered with Plaintiff on account of his protected activity under the FHA, and (4) Defendants were motivated by an intent to discriminate. *Bloch*, 587 F.3d at 783. "Interference is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." *Id.* (internal citations omitted).

In this case, Plaintiff specifically alleges that Defendants interfered with his § 3604(a) and (b) rights or engaged in intimidation on account of his having exercised those rights. Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." In cases where the plaintiff has not been denied a right to purchase or rent — in post-acquisition cases — this section provides a cause of action to those who have been constructively evicted because of their race, color, religion, sex, familial status, or national origin. Beyond constructive eviction, "courts have construed the phrase 'otherwise make unavailable or deny' in subsection (a) to

6

encompass mortgage 'redlining,' insurance redlining, racial steering, exclusionary zoning decisions, and other actions by individuals or governmental units which directly affect the availability of housing to minorities." *Bloch*, 587 F.3d at 778 (quoting *Southend Neighborhood Imp. Ass'n v. St Clair Cnty.*, 743 F.2d 1207, 1209 & n. 3 (citing cases)).

Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." In post-acquisition cases, this subsection (like subsection (a)) applies to constructive eviction, *Bloch*, 587 F.3d at 779, but it also applies to discriminatory restrictions imposed by condo boards or homeowners associations. *Id.* at 780. According to *Bloch*, that would be discrimination in the "conditions" of sale or rental. *Id.*

There is no question that Plaintiff is a protected individual. Plaintiff has not alleged, however, that Defendants — as a group — acted as they did because of Plaintiff's race religion, or national origin. For instance, there are no religion-based allegations in Plaintiff's proposed amended complaint. The only race-based allegation is that Defendant Orbach said that the subdivision is "white" and that Plaintiff would not fit in. The other factual allegation of discriminatory intent involved national origin discrimination, when Defendant Rabin allegedly explained why he thought Plaintiff could live in a 12-inch wide house. That is some support for the claim that Defendant Rabin was motivated by an intent to discriminate, but that allegation about his intent does not extend to the entire group of Defendants. Plaintiff calls the Defendants an "Alliance," but that is just a label, and does nothing to make his claim that Defendants conspired to discriminate against him based on his race, religion, or national origin more plausible. Plaintiff cannot establish a conspiracy by pointing out that a group of neighbors

7

opposed new, unexpected construction in their neighborhood. That opposition is not surprising; the Court does not need to insert a supposition of discrimination to explain it. As to the group of Defendants, then, Plaintiff's allegations do not suggest an intent to discriminate based on race, religion, or nation origin.

Plaintiff also has not plausibly alleged that Defendants, as a group, coerced, threatened, or intimidated him on account of his protected activity. The only allegation that suggests something more than a quarrel among neighbors is Defendant Kagan's initially rather shocking claim that he would burn down any house that Plaintiff built. The force of that claim, however, is blunted by the fact that Plaintiff had not built a house. Moreover, the closer one looks at Plaintiff's claim, the less plausible it becomes. The first time Plaintiff makes that allegation he states "Defendant Kagan said that even if the house gets built, it will be burned down." The second time Plaintiff refers to Defendant Kagan's "*threats* to burn the house if it ever got built." The last time Plaintiff makes the allegation, he softens it to a threat that his house "could be" burned down. From the complaint, then, it is not clear whether Plaintiff is alleging that Defendant Kagan made one threat or many, whether he said that he *would* burn down any house he built, or that whatever he built *could* be burned down.

Setting aside that confusion, however, what Plaintiff has alleged is some showing of discriminatory intent by Defendant Rabin and an upsetting (if hard to pin down) threat by Defendant Kagan. Taken together, Plaintiff has not stated a claim against any individual defendant, and he cannot draw on the neighbors' common opposition to his plans as evidence of a racist conspiracy. There is a difference between saying, effectively — or, in this case, literally — "not in my back yard," and opposing someone's plans to build a house because of their national origin. Liberally construing Plaintiff's *pro se* complaint, and taking all of its well-pled

allegations as true, what Plaintiff has described is a "quarrel among neighbors" that involved, at most, "isolated acts of discrimination." *Bloch*, 587 F.3d at 783.

## B. 42 U.S.C. § 1985(3) (Count 4)

Plaintiff claims that Defendants conspired to deprive him of civil rights in violation 42 U.S.C. § 1985(3). Under Section 1985(3), a claimant must allege "(1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir.1985) (citing *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)). In other words, "a claim under § 1985(3) requires a racially motivated conspiracy to violate or interfere with a plaintiff's federally protected rights." *Brown v. JP Morgan Chase Bank*, 334 Fed. Appx. 758, 759 (7th Cir. 2009) (emphasis in original). If Plaintiff does not plausibly allege state action, the constitutional right at stake must be "one that is entitled to protection against anyone, rather that merely protection from impairment by a state." *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 828 (7th Cir.1975). Finally, the "complaint must indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir.2007) (citation omitted).

Plaintiff asserts that Defendants worked so closely with Highland Park officials that they may be held accountable as state actors. Specifically, Plaintiff alleges that Defendants boasted that they were friends with members of City Council and the Zoning Board and that, essentially,

they had the officials' attention and sympathy. But being friends with local officials and being a local official — or being counted as a state actor for the purposes of federal law — are very different. At its most basic level, the state action doctrine requires that a court find such a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself," *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351, or may be "fairly attributable to the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, (1982). In *Blum v. Yaretsky*, 457 U.S. 991, (1982), the Supreme Court held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004.

The Supreme Court has provided several tests for evaluating the "range of circumstances" that might constitute state action. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001). According to the Seventh Circuit, the various tests can be categorized as (1) the symbiotic relationship test (satisfied when private and public actors carry out a public function); (2) the state command and encouragement test (satisfied when the state requires the actions of the private actor); (3) the joint participation doctrine (satisfied when the private action is the same as the state action); and (4) the public function test (satisfied when private activity is fairly attributable to the state)). *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009).

Despite the nominal existence of these tests, the Seventh Circuit has made clear that its (and the Supreme Court's) precedents have "revealed that these cases do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 816

(7th Cir. 2009) (citing *Brentwood*, 531 U.S. at 295; *Tarpley v. Keistler*, 188 F.3d 788, 792 (7th Cir. 1999) ("All of the tests, despite their different names, operate in the same fashion: [ ] by sifting through the facts and weighing circumstances.")). In *Hallinan*, the Seventh Circuit collected examples of circumstances where action by a private party is properly attributed to the state:

> Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); where the state compels the discriminatory action, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); when the state controls a nominally private entity, *Pa. v. Bd. of Dirs. of City Trusts*, 353 U.S. 230, 231 (1957); when it is entwined with its management or control, *Evans v. Newton*, 382 U.S. 296, 299, 301, (1966); when the state delegates a public function to a private entity, *Terry v. Adams*, 345 U.S. 461, 484 (1953); *West v. Atkins*, 487 U.S. 42, 56–57 (1988); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991), or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

*Hallinan*, 570 F.3d at 815-16.

In this case, Plaintiff alleges that Defendants knew the relevant Highland Park officials and that the officials encouraged them in their efforts to deny Plaintiff the opportunity to build a house on the lots he bought in Highland Park. Those general allegations are insufficient to cast these Defendants as state actors. It should go without saying that private citizens can attend City Council and Zoning Board meetings, even many meetings, and advocate for a particular position without becoming state actors. And that is true even if the officials agree with the private parties lobbying them and let their agreement be known. At most, Plaintiff alleges that Highland Park officials sympathized and openly agreed with Defendants' views, but sympathy and agreement is not a sufficient nexus. See *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) (bare allegations of conspiracy between a private party and state official insufficient to make private actor party a state actor for purposes of 42 U.S.C. § 1983).

Even though Defendants are not state actors, Plaintiff could still state a § 1985(3) claim if he plausibly alleges a private conspiracy to violate certain federally protected rights. Precisely which federally protected rights are predicates for § 1985(3) is not entirely settled. For example, district courts in the Seventh Circuit have held that a conspiracy to violate 42 U.S.C. § 1982 is actionable under § 1985(3), see, *e.g.*, *Bryant v. Polston*, 2000 WL 1670938, at *7 (S.D. Ind. Nov. 2, 2000) ("Section 1982 provides a sufficient predicate for a Section 1985(3) claim."); *Cotton v. Duncan*, 1993 WL 473622, at *4 (N.D. Ill. Nov. 15, 1993) ("If a conspiracy is involved in the deprivation of section 1982 rights, section 1985(3) swings into play." (quoting *Clark v. Universal Builders*, 409 F. Supp. 1274, 1278-79 (N.D. Ill. 1976)), but, more recently, at least one court in this district has firmly rejected that position, see *Comtel Technologies, Inc. v. Paul H. Schweindener, Inc.*, 2005 WL 433327, at *7 (N.D. Ill. Feb. 22, 2005) (§ 1985(3) covers private conspiracies, but only those that violate the Thirteenth Amendment).

*Comtel*'s restrictive view is consistent with authority from the First, Sixth, and Tenth Circuits. See, e.g., *Brown v. Philip Morris Inc.*, 250 F.3d 789, 806 (3d Cir. 2001) ("The great weight of precedential authority, however, supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3) action."). More importantly, that view is consistent with a statement from the Seventh Circuit on the subject. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 n. 20 (7th Cir. 2000) ("While Section 1985(3) extends to private conspiracies, for a private conspiracy to be actionable it must affect the 'Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel.'" (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278, (1993)). The more restrictive view gives effect to the Supreme Court's warning that

12

although § 1985(3) extends to some private conspiracies, it is not a "general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). It is also consistent with the familiar distinction between rights that can be violated only by the state (Fourteenth Amendment) and those that can be violated by anyone, including private actors (Thirteenth Amendment). *See Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 828 (7th Cir. 1975). The Court, therefore, sees no reason to resist the statement in *Brokaw*, and concludes that private conspiracies are only actionable under § 1985(3) if they violate the Thirteenth Amendment, including the right of interstate travel.

In this case, Plaintiff alleges that Defendants' alleged conspiracy to violate the FHA gives him a cause of action under § 1985(3). That claim fails for a number of reasons. First, as just explained, Plaintiff has not plausibly alleged a violation of the FHA. Second, the FHA does not give rise to a cause of action under § 1985(3). Plaintiff also alleges that conspiracies to violate his rights under 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the Thirteenth Amendment give him a § 1985(3) claim. But, like the FHA, § 1981 and § 1982 are not sufficient predicates for a claim under § 1985(3), and, as the Court will explain below, Plaintiff has not plausibly alleged a violation of the Thirteenth Amendment. See, *infra*, section III.F.

### C. 42 U.S.C. § 1981 (Count 5)

Plaintiff alleges that Defendants violated 42 U.S.C. § 1981 by interfering with his ability to "enter into Contracts and Agreements with the City of Highland Park." ¶ 101. See *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998) ("Section 1981 bars all racial discrimination with respect to making and enforcing contracts. 42 U.S.C. § 1981(a). In order to bring a section 1981 claim there must at least be a contract."). But zoning regulations are not

contracts, and there is no issue in this case involving anything like a contract. *Reichelderfer v. Quinn*, 287 U.S. 315, 323 (1932) ("zoning regulations are not contracts by the government"). Plaintiff's proposed second amended complaint does not state a claim under § 1981.

### D. 42 U.S.C. § 1982 (Count 6)

Plaintiff claims that Defendants' conduct violates § 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. If Plaintiff has a claim under § 1982, it must be based on the theory that Defendants' conduct deprived Plaintiff of the right to "hold" his property — to use it the same way as a white person would — and not because he was deprived of a right to rent, buy or sell property. Several judges in this district have concluded that interference with holding property can violate § 1982. In *James v. Village of Willowbrook*, 2012 WL 3017889, at *11 (N.D. Ill. July 19, 2012), Chief Judge Holderman recently joined that group and helpfully collected several cases reaching that conclusion: *Whisby–Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 849 (N.D. Ill. 2003) (Kennelly, J.) (§ 1982 claim asserted against neighbor who detonated flash simulator and shouted racial epithets at black homeowner is valid because "[w]e agree with those courts that have concluded that section 1982's protection of the right 'to hold' property includes the right to use one's property"); *Johnson v. Smith*, 810 F.Supp. 235, 237–38 (N.D. Ill. 1992) (Shadur, J.) (burning cross on lawn and breaking windows in home are sufficient to overcome motion to dismiss § 1982 claim); *Stirgus v. Benoit*, 720 F.Supp. 119, 122 (N.D. Ill. 1989) (Bua, J.) ("When a racially-motivated firebombing destroys a person's home, that person

14

does not truly enjoy the same freedom to acquire and 'hold' property as a similarly situated white citizen.")).

There is good reason for this growing consensus. The Supreme Court explained that § 1982 protects "the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race." *Id.* at *11 (quoting *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981)). By its terms, § 1982 protects the right of all citizens to "hold" property as white people do, and not just the right to convey it. See *Whisby-Myers*, 293 F. Supp. 2d at 849. The Court agrees that each term of § 1982 should be given effect, and that the law therefore protects the *use* of property on equal terms. See *id.* (collecting cases from other circuits).

In this case, Plaintiff has alleged that he was deprived of his right to use his property because of his race. But as explained in the discussion of Plaintiff's FHA claims, Plaintiff has not plausibly alleged that he was discriminated against on the basis of race. Defendant Rabin's snide statements to the Zoning Board about how he could build a very small house do not suffice to state a claim. If the Zoning Board denied Plaintiff a variance because of his race, Plaintiff might have a claim against it. But that is not this case according to Plaintiff's own pleadings.

### E. 42 U.S.C. § 1983 (Counts 7 & 10)

Plaintiff alleges that Defendants violated the Fourteenth Amendment by discriminating against him and violating his property rights under state law. The Court's best guess is that Plaintiff is attempting to state due process and equal protection claims against these Defendants under 42 U.S.C. § 1983. But § 1983 requires state action, see *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009), and the Court has already

explained why these Defendants cannot be considered state actors. See, *supra*, section III.A.2. Plaintiff's proposed second amended complaint fails to state a § 1983 claim.

### F. Thirteenth Amendment (Count 11)

Plaintiff alleges that Defendants' efforts to keep him from building in on his lots violated the Thirteenth Amendment. This claim is a complete nonstarter. The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." It is intended "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski,* 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry,* 240 U.S. 328, 332 (1916)). Plaintiff's fight with these Defendants over Highland Park's zoning regulations and variances, no matter how motivated, "does not evoke in our minds the burdens endured by the African slaves in the cotton fields or kitchens of the antebellum south." *Wright v. Clark County, Ind.*, 132 F.3d 37 (7th Cir. 1997) (quoting *United States v. Bertoli,* 994 F.2d 1002, 1022 (3d Cir.1993)). Plaintiff has no claim under the Thirteenth Amendment.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for leave to amend [93] is respectfully denied. Plaintiff's federal claims are dismissed with prejudice. Plaintiff has also alleged state law claims for defamation (Count 8), slander of title (Count 9), intentional infliction of emotional distress (count 12), and trespass (count 13). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal

claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no reason to depart from that "usual practice" in this case, the Court declines to exercise supplemental jurisdiction over those claims and they are dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (discussing Illinois law giving Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court).

Dated: November 9, 2012 _____
Robert M. Dow, Jr.
United States District Judge